1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6      FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   ALDRIDGE CURRIE, G-44516,          )
                                       )
9              Petitioner,             )     No. C 11-5194 CRB (PR)
                                       )
10      vs.                            )     ORDER DENYING
                                       )     PETITION FOR A WRIT OF
11  GREG D. LEWIS, Warden,             )     HABEAS CORPUS
                                       )
12             Respondent.             )
                                       )
    _____)
13
14          Petitioner, a prisoner at Pelican Bay State Prison, seeks a writ of habeas

15  corpus under 28 U.S.C. § 2254 challenging a conviction from Contra Costa

16  County Superior Court.  Per order filed on February 8, 2012, the court found that

17  the petition stated six cognizable claims for relief under § 2254, when liberally

18  construed, and ordered respondent to show cause why a writ of habeas corpus

19  should not be granted.  But after respondent instead moved to dismiss the petition

20  on the ground that petitioner did not exhaust state judicial remedies as to all six

21  claims, and petitioner conceded that he did not exhaust four claims and requested

22  that the court strike them, the court granted respondent's motion to dismiss, struck

23  petitioner's four unexhausted claims and ordered respondent to show cause only

24  as to the remaining two exhausted claims: (1) illegal search of petitioner's jail cell

25  before trial and (2) discriminatory use of a peremptory strike.  Respondent has

26  filed an answer to the order to show cause and petitioner has filed a traverse.

27  Having reviewed the papers and underlying record, the court concludes that

28  petitioner is not entitled to habeas corpus relief on either claim.

## STATEMENT OF THE CASE

In 1998, a jury convicted petitioner of second degree murder, attempted robbery and being a felon in possession of a firearm, and found true various enhancement allegations.  The judgment was affirmed on direct appeal; but on September 12, 2005, the Ninth Circuit granted federal habeas relief under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), based on the  prosecutor's discriminatory use of a peremptory challenge.  After re-trial in 2008, petitioner was convicted of the same charges and sentenced to a prison term of 15 years to life plus 14 years.

On January 10, 2011, the California Court of Appeal affirmed the judgment of the trial court and, on May 11, 2011, the Supreme Court of California denied review.  The instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 followed.

## STATEMENT OF THE FACTS

At trial, the evidence showed that Santos Maldonado ("victim") and his girlfriend, Ami Jurica, dealt drugs together.  Both the victim and Jurica knew petitioner, who had previously bought drugs from them.  Jerry Silva, a drug dealer, also often used drugs with them.

On July 12, 1995, the victim and Jurica were sitting in the victim's car in front of Silva's house.  Petitioner and the victim had argued about a gun that the victim had gotten from Silva, and both the petitioner and the victim went into Silva's home to resolve their dispute.  Later on, petitioner approached the victim while the victim was in his car, and asked the victim how much methamphetamine he would sell for $100.00.  The victim answered that he would sell petitioner an "eight ball."  Petitioner left, saying that he had money around the corner and would return.  When petitioner returned, he shot the victim in the neck with a handgun, ripped a gold chain off the victim's neck, and took the victim's money and methamphetamine.

/

# DISCUSSION

A.    Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.     Claims & Analysis

Petitioner seeks federal habeas corpus relief under § 2254 on the basis of two claims: (1) the illegal search of his jail cell before trial violated several of his constitutional rights, and (2) the prosecutor's use of a peremptory challenge against an African-American juror violated his right to equal protection.

1.     Illegal Search

Petitioner claims that the prosecution illegally searched his jail cell before trial and thereby violated his Fourth Amendment right to be free from unreasonable searches and seizures, Sixth Amendment right to assistance of counsel and Fourteenth Amendment right to a fair trial.

The California Court of Appeal summarized the proceedings below:

> A few days before the trial began, appellant was placed in a visiting room at the jail where he was being housed while two investigators from the District Attorney's Office conducted a warrantless search of his cell. The defense brought the issue to the court's attention, at which point the prosecutor asked to speak to the court outside the presence of defense counsel to discuss the reasons for the search. The court held an in camera hearing over defense counsel's objection.
>
> At that hearing, a redacted transcript of which was later provided to defense counsel and which is now a part of the record on appeal, the prosecutor explained that he had been contacted by an attorney whose client had information suggesting that appellant was attempting to tamper with Ami Jurica, the prosecution's main witness. In response to this report, two investigators from the District Attorney's office searched appellant's cell and seized a letter from a Debbie O. (apparently a friend or acquaintance of

appellant's), which was of some concern because Ms. O. lived in Idaho, the same state as Jurica. The court ruled that the defense was entitled to any documents that had been seized.

Defense counsel filed a motion to dismiss the charges and/or suppress evidence, arguing that the search of the jail cell had violated appellant's Sixth Amendment rights to a fair trial and assistance of counsel by giving the prosecution access to privileged information. (U.S. Const., 6th Amend.) The motion also challenged the search on Fourth Amendment grounds and sought recusal of the prosecutor because he had allegedly obtained access to attorney-client communications between appellant and his appointed counsel. (U.S. Const., 4th Amend; Evid.Code, §§ 950-956.5.)

The motion to dismiss was accompanied by a declaration by appellant, stating that after the cell search, he discovered that at least 20 pages of notes relating to trial preparation were missing, as was at least one report prepared by defense investigators and various other private papers. Also attached was a declaration by Kelly Whitney, a private investigator whose partner had been working for appellant's defense. Whitney stated that while waiting for her partner outside the courtroom on the date of the in camera hearing, she saw the prosecutor leave the courtroom and make a call in the hallway. "I heard him say, 'Hey Man, still no reports, pictures or' . . . and a third word that I am unsure of. The third word was something to the effect of documents or photos. Then he concluded the sentence by saying, 'ri-ight.' The strong inflection of the word 'right' did not sound like a question. It sounded like [the prosecutor] was telling the person on the other end of the line that he preferred there to still be no reports, pictures or _____ (whatever the third item was that he said)."

The court held a hearing at which Inspector Sanchez, one of the two investigators who had searched appellant's cell, was called as a witness. Sanchez testified that they were investigating possible threats against a witness in appellant's case, rather than the underlying crimes. They conducted the search based on information they obtained from an interview they conducted at the jail, not on the prosecutor's instructions. The only items seized from the cell were a letter and an envelope, and the investigators did not take photographs of any documents. Sanchez acknowledged that they went through other documents in the cell to determine their nature, but they were not looking for legal documents and did not read any legal documents.

Appellant was called as a witness and testified that other papers were missing from his cell following the search. James Baxter, a jail inmate housed on the same module as appellant, testified that he saw the investigators enter appellant's cell and saw flashing lights inside the cell.

The trial court denied the motion to dismiss but granted the motion to suppress. It found credible Sanchez's testimony that the investigators had not seized any documents other than the letter

from Debbie O. and an envelope.  It concluded that no Sixth Amendment violation had occurred, but to avoid any potential violation of the right to counsel, the investigators who searched the cell were ordered not to communicate the results of their search to the prosecutor.  The court ordered that items seized from the cell and any fruits of the search would be suppressed, and that no further searches of appellant's jail cell would be conducted by the District Attorney's office without prior permission from the court. No evidence of the search or items discovered during the search was introduced at trial.

Appellant raised the issue of the cell search in his motion for new trial, in which he characterized the search as prosecutorial misconduct.  The court denied the motion, reasoning that because the fruits of that search had been suppressed, there could be no prejudice to appellant's Sixth Amendment rights.

People v. Currie, No. A123708, 2011 WL 63083, at **11-12 (Cal. Ct. App. Jan. 10, 2011) (Resp. Ex. G).

a.   Right to be free from unreasonable searches and seizures

Petitioner's Fourth Amendment claim is barred from federal habeas review under Stone v. Powell, 428 U.S. 465 (1976).  Stone v. Powell bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims.  428 U.S. at 481-82, 494.  Even if the state courts' determination of the Fourth Amendment claims is improper, it may not be remedied in federal habeas so long as the petitioner was provided a full and fair opportunity to litigate the claims.  See Locks v. Sumner, 703 F.2d 403, 408 (9th Cir. 1983); see also Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986) (opportunity for fair hearing forecloses federal habeas court's inquiry into state court's subsequent course of action, including whether trial court made any express findings of fact).  Because the California courts provided petitioner with an opportunity for full and fair litigation of his Fourth Amendment claim, his claim is barred from federal habeas review.  See Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990) (whether defendant litigated 4th Amendment claim in California state court irrelevant if he had opportunity to do so under California law).

b.   <u>Right to assistance of counsel</u>

Petitioner claims that the illegal search of his jail cell violated his Sixth Amendment right to counsel because it allowed the prosecution to gain access to confidential attorney-client or attorney work-product communications.  The claim is without merit.

The Sixth Amendment provides that "[i]n criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," U.S. Const. amend. VI, and such right can be meaningfully implemented only if a criminal defendant knows that his communications with his attorney are private and that his lawful preparations for trial are secure against intrusion by the government, his adversary in the criminal proceeding. <u>Weatherford v. Bursey</u>, 429 U.S. 545, 553 n.4 (1997).  But "[i]mproper interference by the government with the confidential relationship between a criminal defendant and his counsel violates the Sixth Amendment only if such interference substantially prejudices the defendant.  Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." <u>United States v. Danielson</u>, 325 F.3d 1054, 1069-70 (9th Cir. 2003) (quotations and citation omitted).

In cases where the claim is that the prosecution's alleged intrusion resulted in the prosecution obtaining certain pieces of evidence, the burden is on the defendant to show prejudice. <u>Id.</u> at 1070 (citing <u>Brewer v. Williams</u>, 430 U.S. 786 (1977)).  In cases where the interference has resulted in the prosecution learning a defendant's trial strategy, the defendant must first make a prima facie showing of prejudice. <u>Id.</u> at 1071.  Only if the prima facie case has been established, the burden shifts to the government to show that there has been no prejudice to the defendant as a result of these communications. <u>Id.</u> at 1074.

1    The California Court of Appeal rejected petitioner's claim that the search

2    violated his Sixth Amendment right to counsel because it allowed the prosecution

3    to gain access to confidential attorney-client or attorney work-product

4    communications.  The court found that petitioner suffered no prejudice because

5    no confidential or privileged documents were seized.  The court explained:

6        . . . There was no demonstrable prejudice in light of the trial
         court's determination that no privileged materials were seized, and
7        any substantial threat of prejudice was obviated by the court's
         order suppressing the fruits of the search.

8
         Appellant claims the record does establish prejudice because
9    (1) the prosecution learned that Jurica's testimony would not
     change during the retrial; and (2) appellant's belief in the
10   confidentiality of his communications with counsel were shaken.
     As to the first claim, the lack of any documents directly suggesting
11   that appellant was attempting to influence Jurica's testimony did
     not "put to rest" the tampering allegation or "remove [ ] that doubt
12   that the chief prosecution witness would suddenly support the
     defense theory of self-defense," as appellant now claims.  All that
13   can be said is that apparently, the cell contained no written
     evidence of attempts to influence Jurica.  As to the impact of the
14   search upon appellant's relationship with counsel, he has made no
     showing as to how his subjective mental state actually interfered
15   with his defense.  We also question whether the asserted lack of
     confidence would be reasonable when the court granted appellant's
16   motion to suppress the evidence that was seized and ordered the
     prosecutor to obtain permission from the court before conducting
17   any other searches of appellant's cell.  In any event, the trial court
     found that appellant had not lost faith in his trial counsel as a result
18   of the search, a factual finding to which we defer.

19   People v. Currie, 2011 WL 63083, at *13 (citation omitted).

20   Petitioner argues that the trial court improperly placed the burden on him

21   to prove prejudice from the search, rather than requiring the prosecution to prove

22   that it did not gain an advantage from it.  But even if the prosecution had obtained

23   some sort of privileged information from the search, in order to shift the burden to

24   the government to prove that they did not use privileged information the

25   defendant first must establish a prima facie showing of prejudice.  Danielson, 325

26   F.3d at 1071.  "[T]he government informant must have acted affirmatively to

27   intrude into the attorney-client relationship and thereby to obtain the privileged

28   information."  Id. at 1073-74.

Petitioner has not pointed to any evidence that law enforcement "deliberately" or "affirmatively" intruded into the attorney-client relationship for the purpose of obtaining the defense trial strategy. The record shows that the investigators searched petitioner's cell for the sole purpose of investigating possible threats against a prosecution witness, rather than the underlying crimes. The only items seized from petitioner's cell were a letter from Debbie O. and an envelope, and the investigators declared that they did not take photographs of any documents. Moreover, the state courts determined that no confidential information was actually communicated to the prosecution – a finding that is entitled to deference and that petitioner does not contradict with any evidence. In addition, the trial court suppressed any evidence obtained from the search, thereby minimizing the potential for prejudice.

Under these circumstances, it cannot be said that the California Court of Appeal's rejection of petitioner's Sixth Amendment claim for lack of prejudice was objectively unreasonable. See Weatherford v. Bursey, 429 U.S. at 556-58 (holding that without presence of tainted evidence, communication of defense strategy to prosecution or purposeful intrusion by agent, there was no 6th Amendment violation). Petitioner is not entitled to federal habeas relief on his Sixth Amendment claim. See 28 U.S.C. § 2254(d).

                    c.    Right to a fair trial

Petitioner claims that the prosecutor committed misconduct in violation of his right to a fair trial by directing investigators to search his jail cell. The claim is without merit.

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power, however. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated only when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.; Smith v.

Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  But even then, habeas relief is in order only if the error had a substantial or injurious effect or influence in determining the jury's verdict.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The California Court of Appeal rejected petitioner's prosecutorial misconduct claim on the same ground it rejected petitioner's Sixth Amendment claim – the court found "no demonstrable prejudice" because "no privileged materials were seized, and any substantial threat of prejudice was obviated by the [trial] court's order suppressing the fruits of the search." People v. Currie, 2011 WL 63083, at *13.  The court's determination was not contrary to, or an unreasonable application of, clearly established federal law, or involved an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

Petitioner is not entitled to federal habeas relief on his prosecutorial misconduct claim.  As noted earlier, petitioner has not demonstrated that any prosecutorial misconduct in connection with the warrantless search of his jail cell had a substantial and injurious effect or influence in determining the jury's verdict.  See Brecht, 507 U.S. at 637.

### 2.    Peremptory Challenge

Petitioner, who is African-American, argues that the prosecutor used a peremptory challenge to exclude an African-American juror on racial grounds.  He claims that the denial of his objection to the challenge under Batson v. Kentucky, 476 U.S. 79 (1986) (commonly referred to in the California courts as a Batson/Wheeler motion)[1] violated the Equal Protection Clause.

Batson held that the Equal Protection Clause forbids the challenging of potential jurors solely on the basis of race.  476 U.S. at 89.  Batson challenges

---

[1]People v. Wheeler, 583 P.2d 748 (Cal. 1978), is Batson's California analog.

involve a three-step inquiry.  <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006).  First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge based on race.  <u>Id.</u>  If this showing is made, the burden the shifts to the prosecutor to offer a race-neutral explanation for the strike.  <u>Id.</u>  Finally, the court evaluates "the persuasiveness of the justification proffered by the prosecutor" to decide whether the defendant has shown purposeful discrimination.  <u>Id.</u> (internal quotation marks omitted).  Ultimately, the defendant has the burden of persuading the court that the strike was racially motivated.  <u>Id.</u> (citing <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995)).

        a.      <u>Procedural history</u>

       The California Court of Appeal summarized the relevant procedural history:

> In reviewing a ruling on a <u>Batson</u>/<u>Wheeler</u> motion, we are typically limited to the record of what happened in the course of the voir dire during which the peremptory challenge was exercised. This case has a more complex history, and requires us to look at previous proceedings in the case at hand, as well as the prosecutor's actions in an unrelated case.

> Appellant was originally convicted of second degree murder in a trial that ended in 1998, in which the People were represented by the same prosecutor.  The original judgment was affirmed on direct appeal (<u>People v. Currie</u> (A084426, Jan. 30, 2001) nonpub. opn.), but was ultimately reversed by the Ninth Circuit Court of Appeals in a 2 to 1 decision in which the majority concluded the prosecutor had violated <u>Batson</u> by excusing an African-American juror based on her race.  (<u>Currie v. Adams</u>, <u>supra</u>, 149 Fed.Appx. 615.)  Although the prosecutor had stated during the first trial's voir dire that he excused the juror because she was undecided about the death penalty (which the prosecution was then seeking based on the first degree special circumstance murder charge), two male Caucasian jurors who had expressed opposition to the death penalty were left on the panel.  In light of the failure to challenge these other two jurors, the majority of the Court of Appeals panel concluded the prosecutor's stated reason for striking the African-American juror was pretextual and that the challenge was motivated by race.  (<u>Ibid.</u>)

> The case was remanded and retrial commenced in 2008, with the same prosecutor again assigned as the trial deputy.  During voir dire, defense counsel objected on <u>Batson</u>/<u>Wheeler</u> grounds after the prosecutor used a peremptory challenge to excuse Juror C., an African-American woman.  The prosecutor explained that he had graded prospective jurors based on their questionnaires

and that Juror C. had scored lower than many because some of her answers were inconsistent, she had no opinion regarding self-defense and psychiatric testimony, and she had commented that the defendant was due a fair trial.  The trial court granted a defense motion for mistrial after comparing Juror C.'s responses to those of others who remained on the panel (see Snyder v. Louisiana (2008) 552 U.S. 472, 477, regarding comparative juror analysis), and concluded "the excusal of [Juror C.] likely was not race neutral because the reasons given . . . cannot be distinguished from other jurors who have not been excused."

Defense counsel then filed a motion to recuse the prosecutor and his office based in part on his history of using peremptory challenges to excuse African-American jurors.  Counsel presented evidence that the prosecutor had also been the trial deputy in People v. Johnson, a murder case that eventually was reversed by the United States Supreme Court on Batson/Wheeler grounds. (Johnson v. California (2005) 545 U.S. 162, 170 (Johnson).)  In Johnson, reversal was necessitated because the trial judge had imposed too stringent a standard when determining whether the defense had established the prima facie case of discrimination necessary to prevail under Batson/Wheeler.  (545 U.S. at p. 170.) When that case was ultimately remanded to the trial court with instructions to assume a prima facie case had been established and to conduct an analysis under the second and third prongs of the Batson/Wheeler test (see People v. Johnson (2006) 38 Cal.4th 1096, 1103-1104), the superior court vacated the conviction and ordered a new trial after concluding that at least one of the peremptory challenges appeared to have been exercised for a discriminatory reason.

After considering this evidence, the trial court denied the motion to recuse the prosecutor.  In making its ruling, it amplified its views of the Batson/Wheeler error leading to the mistrial after the first round of voir dire on retrial:  "[A]t the time I granted the Wheeler motion in the present case, I accept and accepted and do accept [the prosecutor's] description of his reasons for striking the juror that prompted the Wheeler motion. . . . I believe and credit that he has a grading system that he uses for all jurors, and that his reasons for striking [Juror C.], who was the juror that led to the Wheeler motion, was that there were people in the six-pack who he had graded more highly than [Juror C.] and it was his goal to get those people on the jury of 12. [¶]. . . . [¶] My opinion, as I articulated at the time, however, is that the law requires me to go behind the grading system and inquire as to the reasons for the grade, and then to conduct the comparative analysis of those reasons against all the other jurors who are in similar situations or answered questions similarly. . . .  I did conduct a comparative analysis and found that the reasons for [Juror C.'s] grade being lower than other jurors' grades did not withstand the analysis."

Trial recommenced and a new jury panel was called. During this second round of voir dire, Juror J., a 31-year-old African-American woman, was seated for questioning.  Juror J. had stated on her questionnaire that she was a college graduate employed as a sales manager, who had a 12-year-old daughter.

Juror J. had friends and family members who had been arrested for drug related issues, but she believed they had been treated fairly by the criminal justice system.  Juror J. also indicated that several members of her family had a problem with crack cocaine, and that her attitude about illegal drug use was that it "was very sad" but "to each his own."  She wrote that she believed that groups such as Blacks and Hispanics were wrongfully targeted by the police in Contra Costa County.  Responding to a question as to whether the fact of appellant's arrest and prosecution caused her to believe he was probably guilty of something, she checked "no" and wrote as a comment, "No, I don't know what [he] is accused of and he is presumed not guilty until proven."

During voir dire, the prosecutor informed the court that because he had run out of time the day before, he had not questioned Juror J. about the statement in her questionnaire that she had relatives who had been charged with criminal offenses, nor had he asked her about an apparent discrepancy between that response and another in which she indicated that neither she nor anyone close to her had been a defendant in a criminal case.  The court asked additional questions of Juror J., who explained that she had been referring to her brother and her cousin, that her brother had been "out of Alameda [C]ounty" about six years ago, and that her cousin was now deceased (although not for any reason relating to his case).  She stated that she believed both had been treated fairly and that neither case would interfere with her ability to serve as a juror.

The prosecutor ultimately exercised a peremptory challenge against Juror J.  Defense counsel brought a motion under Batson/Wheeler, observing that she was the only African-American on the panel, the others having been excused for hardship reasons.  The prosecutor responded that the striking of a single juror did not demonstrate a pattern of excluding African-Americans.  The trial court denied the motion, finding no prima facie case of discrimination.  It noted that striking a single person for racial reasons would support a prima facie case if the circumstances gave rise to a reasonable inference that the challenge was made on racial grounds, but in the case of Juror J., there was an obvious reason for the prosecutor's challenge: her brother and a cousin had both been prosecuted for drug offenses.

The trial court acknowledged that Juror J. had stated she believed her brother and cousin were treated fairly, but "I think there is a very reasonable basis to strike someone who has relatives who have been prosecuted even when they say that they felt it was fair and that would not prevent them from being objective in this case.  I think it is a reasonable race neutral reason to strike anyone who has a close relative who has been prosecuted.  [¶]  So for that reason based on my observation of the facts, I don't believe a prima facie case has been made."  The court clarified that in making its ruling, it had considered the prosecutor's history with respect to Batson/Wheeler issues, including the Ninth Circuit's order vacating the first judgment, the mistrial granted on Batson/Wheeler grounds during the first round of jury selection on retrial, and the prosecutor's conduct in the Johnson case.

After determining that no prima facie case had been made, the court allowed the prosecutor to articulate for the record his reasons for excluding Juror J. The prosecutor stated that in addition to the reasons noted by the court, Juror J. had indicated that several family members had used crack cocaine; that she had commented that she did not know what appellant was accused of even though the charges had been read to the panel; that one of the persons she knew who had been prosecuted was a brother, a very close relative; and that her answers on the questionnaire appeared inconsistent as to whether she or a family member had been a "victim, witness or defendant" in a criminal matter. The court reiterated that it had not found a prima facie case of discrimination and found, moreover, that "the reasons provided are race neutral and are not a sham or a pretext, but are the actual reasons that [the prosecutor] exercised the peremptory challenge."

After the jury returned its verdict, the defense filed a motion for new trial arguing that the prosecutor committed several acts of misconduct, including the alleged <u>Batson</u>/<u>Wheeler</u> violation with respect to Juror J. In denying the motion, the court reiterated that it had found no prima facie case of discrimination where the drug arrests of family members supplied an obvious reason for striking Juror J. from the panel. The court also noted that Juror J. had studied social behavior in college, and that many prosecutors believe the social sciences attract people with more liberal views who are less likely to convict. Moreover, Juror J. had stated in her questionnaire that she believed certain people, particularly Blacks and Hispanics, were treated unfairly by the system. The court emphasized that it had considered the prosecutor's history of <u>Batson</u>/<u>Wheeler</u> violations when it had ruled on the motion, but concluded that in light of all the circumstances, the challenge to a single African-American juror "did not raise the inference of a prima facie case."

During none of these proceedings did defense counsel suggest that the trial court conduct a comparative analysis of the responses given by Juror J. and the jurors who eventually sat on the case.

<u>People v. Currie</u>, 2011 WL 63083, at **3-6 (footnote omitted).

   b. <u>California Court of Appeal's opinion</u>

    The California Court of Appeal rejected petitioner's <u>Batson</u> claim. The court found that the record supported the trial court's ruling that petitioner did not establish a prima facie case of racial discrimination: "Substantial evidence supports the trial court's stated conclusion that Juror J. was not a desirable panelist for the prosecution because she had two relatives who had been arrested for drug offenses, and that consequently, no prima facie case had been made." <u>People v. Currie</u>, 2011 WL 63083, at *7. The court also considered

1    petitioner's claim that a third-stage <u>Batson</u> review showed that the prosecutor's

2    reasons for challenging Juror J. were not race-neutral and, after conducting a

3    comparative juror analysis for the first time on appeal, rejected the claim.  The

4    court explained:

5         Here, the prosecutor explained that he was excusing Juror J.
     for several reasons: her brother and cousin had been arrested on
6    drug offenses, and her brother, in particular, was a very close
     relative; she had several relatives who had used crack cocaine; she
7    had indicated she did not know the crime appellant was charged
     with committing, even though the charges had been read to the
8    panel; and her responses on the questionnaire were arguably
     inconsistent.  These were nondiscriminatory reasons and we defer
9    to the trial court's determination that they were genuine.  (<u>Cruz</u>,
     <u>supra</u>, 44 Cal.4th at p. 659, 80 Cal.Rptr.3d 126, 187 P.3d 970; <u>see</u>
10   <u>also People v. Silva</u> (2001) 25 Cal.4th 345, 386, 106 Cal.Rptr.2d
     93, 21 P.3d 769.)

11

12        We turn now to the questionnaires of the seated jurors that
     appellant asks us to examine and compare to Juror J.'s responses.
13   Juror No. 68 had been arrested and charged with driving under the
     influence in 1995 and had a niece and friend who had drug
14   problems.  Juror No. 81, who was 56 years old at the time of the
     trial, had been convicted of a shoplifting offense at age 19.  Juror
15   No. 35 had been twice arrested and charged with driving under the
     influence in the 1980s, and had tried drugs when he was in his
16   twenties.  Juror No. 11 had a niece who had been charged with an
     offense involving illegal drugs and had been in and out of
17   rehabilitation. Juror No. 66 knew a coworker who was addicted to
     drugs.  Juror No. 74 had a brother who had gone to prison for
18   fleeing from a traffic arrest and a cousin who was addicted to crack
     cocaine and who "lies [,] cheats, steals & prostitutes to get money
19   for drugs.  We all hate her calling us with trumped up stories, e.g.,
     'I have bone cancer and need money for treatment.'"  Juror No. 29
20   had an 80-year-old brother who had been arrested for an unknown
     offense when he was young and had two in-laws with drug
21   problems.

22        None of these responses undermines the prosecutor's
     reasons for challenging Juror J.  (<u>See Cruz</u>, <u>supra</u>, 44 Cal.4th at p.
23   661, 80 Cal.Rptr.3d 126, 187 P.3d 970.)  It is true that some of the
     seated jurors had contacts with the criminal justice system, and
24   others had family members, friends or acquaintances who had
     problems with illegal drugs.  But Juror J.'s situation was different,
25   in that she had "several" family members who had a problem with
     crack cocaine, and a very close family member (a brother) who had
26   been arrested for a drug related offense.  She also stated in her
     questionnaire that she had "friends" who had been arrested for the
27   same reason.  Drug use did not appear to be nearly as pervasive in
     the social circles of the seated jurors, and the prosecutor could
28   quite reasonably differentiate between her responses and those of
     the seated jurors.  Substantial evidence supports the trial court's
     finding that the prosecutor did not excuse Juror J. based on her

1    race.  (Ibid.)

2    People v. Currie, 2011 WL 63083, at *9-10.

3          c.      Analysis

4              A state court's ruling on whether a criminal defendant established a

5    prima facie case of prosecutorial discrimination is entitled to a presumption of

6    correctness on federal habeas review.  See Tolbert v. Page, 182 F.3d 677, 685 (9th

7    Cir. 1999) (en banc).  But no presumption of correctness is in order if the state

8    court did not use the correct legal standard for determining whether defendant

9    established a prima facie case of prosecutorial discrimination.  See Fernandez v.

10   Roe, 286 F.3d 1073, 1077 (9th Cir. 2002) (no presumption of correctness for

11   decision that referred to California Wheeler standard which applied wrong prima

12   facie legal standard).  Whether the state trial court applied the correct prima facie

13   legal standard is a thorny issue in this case.  So is whether deference may be

14   afforded on the issue without a comparative juror analysis.  Under the

15   circumstances, the court will proceed directly to the ultimate question of whether

16   petitioner has shown purposeful discrimination.  Cf. Hernandez v. New York, 500

17   U.S. 352, 359 (1991) (suggesting that once prosecutor has offered race-neutral

18   explanation for peremptory challenge and state court has ruled on ultimate

19   question of intentional discrimination, preliminary issue of whether defendant has

20   made prima facie showing becomes moot).

21          Petitioner claims that the California courts unreasonably determined that

22   the prosecutor did not engage in purposeful discrimination.  He argues that the

23   comparative juror analysis conducted by the California Court of Appeal

24   demonstrates that the prosecutor's reasons for challenging Juror J. were not race-

25   neutral.  Petitioner's claim does not warrant federal habeas relief.

26          In deciding if the defendant has carried his burden of persuasion at

27   Batson's third step, "a court must undertake a sensitive inquiry into such

28   circumstantial and direct evidence of intent as may be available."  Batson, 476

U.S. at 93 (internal quotation marks omitted).  The "totality of the relevant facts" includes the "prosecutor's statements about his jury selection strategies and his explanations . . . for striking minority jurors" as well as "the characteristics of people he did not challenge." Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir. 2006) (en banc).

As part of its evaluation of the prosecutor's reasoning, the court must conduct a comparative juror analysis – that is, it must "compar[e] African American panelists who were struck with those non-African American panelists who were allowed to serve." Briggs v. Grounds, 682 F.3d 1164, 1170 (9th Cir. 2012).  Where the prosecutor's reasons for striking a black juror applies "just as well" to a non-black juror who is selected for the panel, "that is evidence tending to prove purposeful discrimination" that should be considered in assessing the genuineness of the prosecutor's proffered explanations.  Miller-El v. Dretke, 545 U.S. 231, 241 (2005).

When evaluating the persuasiveness of the prosecutor's justifications at Batson's third step, the trial judge is making a credibility determination. Although the prosecutor's reasons for the strike must relate to the case to be tried, the court need not believe that "the stated reason represents a sound strategic judgment" to find the prosecutor's rationale persuasive; rather, it need be convinced only that the justification "should be believed." Kesser, 465 F.3d at 359 (quoting Hernandez, 500 U.S. at 365).  Because "it is widely acknowledged that the trial judge is in the best position to evaluate the credibility of the prosecutor's proffered justifications," due deference must be accorded to the trial judge's determination. Briggs, 682 F.3d at 1171.  Indeed, even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . on habeas review that does not suffice to supersede the trial court's credibility determination." Rice, 546 U.S. at 341-42.

/

A state court's finding that the prosecutor did not engage in purposeful discrimination is reviewed under the deferential standard set forth in 28 U.S.C. § 2254(d)(2). See Briggs, 682 F.3d at 1170. "Thus, a state court's decision will be upheld unless it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Jamerson v. Runnels, No. 12-56064, 2013 WL 1749212, at *4 (9th Cir. Apr. 24, 2013) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, in evaluating habeas petitions premised on a Batson violation, "our standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that the trial court's credibility determination was supported by substantial evidence, we must uphold it." Briggs, 682 F.3d at 1170 (citing Rice, 546 U.S. at 338-42). "This is because the question of discriminatory intent 'largely will turn on evaluation of credibility' and 'evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.'" Jamerson, 2013 WL 1749212, at *4 (quoting Hernandez, 500 U.S. at 365).

The California Court of Appeal was not objectively unreasonable in concluding that substantial evidence supported the trial court's finding that the prosecutor did not excuse Juror J. based on her race. See Rice, 546 U.S. at 341-42. The court reasonably determined that the reasons offered by the prosecutor for excusing Juror J. – her brother and cousin had been arrested on drug charges, and her brother, in particular, was a very close relative; she had several relatives who had used crack cocaine; she had indicated she did not know the crime petitioner was charged with committing, even though the charges had been read to the panel; and her responses to the questionnaire were arguably inconsistent – were nondiscriminatory reasons and that the trial court's finding that the reasons were genuine should be accorded deference. The court also reasonably proceeded to conduct a comparative juror analysis for the for time on appeal and reasonably concluded that the analysis did not alter its conclusion that substantial evidence

supported the trial court's finding that the prosecutor did not excuse Juror J. based on her race.

Petitioner argues that the California Court of Appeal unreasonably concluded that the comparative juror analysis it conducted did not establish that the prosecutor's reasons for challenging Juror J. were not race-neutral.  Not so.  After comparing the responses of Juror J. with those of seven non-black seated jurors, the California Court of Appeal determined that the fact that Juror J. had a very close family member (a brother) and friends who had been arrested for drug related offenses, and had several family members who had used crack cocaine, reasonably distinguished her from some of the seated jurors who had been arrested and charged with non-drug related offenses, and others who had family members, friends or acquaintances who had problems with illegal drugs.  The court reasoned that "[d]rug use did not appear to be nearly as pervasive in the social circles of the seated jurors" as in the social circles of Juror J. and that the prosecutor therefore could "reasonably differentiate between her responses and those of the seated jurors."  People v. Currie, 2011 WL 63083, at *10.  The California Court of Appeal's conclusion was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See 28 U.S.C. § 2254(d)(2).

Although some of the seated jurors had family or friends who had problems with illegal drugs, including one whose niece had been charged with a drug offense, none had a close relative such as a brother arrested for drug related offenses, as did Juror J.  And none appeared to have as much contact with drug users as did Juror J.  The parallels between Juror J. and the seated jurors therefore "are relatively weak and offer little evidence of discriminatory motive."  Jamerson, 2013 WL 1749212, at *10 (finding that non-black seated juror whose daughter had a friend who is incarcerated not in sufficiently analogous situation to excused black juror whose brother was incarcerated).  Under the circumstances, it

cannot be said that the California Court of Appeal was unreasonable in crediting the prosecutor's rationale under our "doubly deferential standard of review." Id. at *11. After all, some of the nondiscriminatory reasons offered by the prosecution and accepted by the trial court as genuine had nothing to do with Juror J.'s pervasive exposure to drug use or the comparative analysis conducted by the court of appeal – Juror J. had indicated she did not know the crime petitioner was charged with committing, even though the charges had been read to the panel, and Juror J.'s responses to the questionnaire were arguably inconsistent. See People v. Currie, 2011 WL 63083, at *10; see also id. at *6 (trial court noted that (1) "Juror J. had studied social behavior in college" and "many prosecutors believe the social sciences attract people with more liberal views who are less likely to convict," and (2) "Juror J. had stated in her questionnaire that she believed certain people, particularly Blacks and Hispanics, were treated unfairly by the system").

Although the prosecutor in this case had a history of Batson violations, nothing in the record suggests that the state courts, after carefully taking into account the prosecutor's history and conducting a comparative juror analysis, unreasonably found the prosecutor's justifications for excusing Juror J. to be genuine and not pretextual. See Briggs, 682 F.3d at 1170 ("[W]e must defer to the California court's conclusion that there was no discrimination unless that conclusion 'was based on an unreasonable determination of the facts.'"). Petitioner is not entitled to federal habeas relief on his Batson claim. See Rice, 546 U.S. at 341-42 (even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . on habeas review that does not suffice to supersede the trial court's credibility determination").

/

/

/

**CONCLUSION**

After a careful review of the record and relevant law, the court is satisfied that the petition for a writ of habeas corpus should be DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is granted as to petitioner's Batson claim.  But a COA is denied as to petitioner's other claims because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  May 8, 2013

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.11\Currie, A.11-5194.denial.final.wpd